IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

IN RE:      LIVING HOPE SOUTHWEST
           MEDICAL SERVICES, LLC, Debtor

PINEWOOD ENTERPRISES, L.C.                APPELLANT

v.               Case No. 4:11-CV-04059

RENEE S. WILLIAMS                  APPELLEE

CHARLES TUCKER                      TRUSTEE

## <u>MEMORANDUM OPINION AND ORDER</u>

Currently before the Court are the following motions and related pleadings which are ripe for consideration:

- Appellant Pinewood Enterprises, L.C.'s ("Pinewood") **Emergency Motion to Stay Pending Appeal** (Doc. 3) supporting brief (Doc. 4), and supplement (Doc. 10); Appellee Renee S. Williams' Response (Doc. 13), supporting brief (Doc. 12), and Response to Pinewood's Supplement (Doc. 14); and Pinewood's Reply (Doc. 15);

- Williams' **Motion to Strike Mis-Designated Records**, incorporated in her Objections to Pinewood's designation of the record on appeal (Doc. 16), and Pinewood's Response (Doc. 18);

- Williams' **Motion to Strike Supplement to Transmittal of Record on Appeal** (Doc. 19);

- and Pinewood's **Motion to Consolidate Appeals** (Doc. 26); Williams' Response (Doc. 28), and Pinewood's Reply (Doc. 29).

Also for the Court's consideration are the arguments made by counsel for the parties at a hearing held on September 26, 2011.  The Court notes that this matter seems to be ripe for a decision on the merits, as the designation of record has been filed, and both parties have filed their briefs.  The Court does not wish to delve into the merits of this case at this juncture and has limited its review to the currently pending motions and supporting documents.  A decision on the merits will be made subsequent to the resolution of the above-listed motions.

For the reasons stated herein, Pinewood's Motion to Stay (Doc. 3) is GRANTED; Williams' two Motions to Strike (Docs. 16 and 19) are DENIED; and Pinewood's Motion to Consolidate (Doc. 26) is GRANTED. The Court will address each motion in turn.

## I. Background

The instant matter has a long and complex litigation history involving state court, bankruptcy court, and various appeals from bankruptcy court to federal district court.  The Court will attempt to state the facts and procedural history of this case relevant to the motions at hand.

Appellant Pinewood is an unsecured creditor of debtor Living Hope Southwest Medical Services, LLC ("LHSW" or "the Debtor").  In 1998 Pinewood, as landlord, and LHSW entered into a lease of certain real property located in Texarkana, Arkansas. The lease was partially guaranteed by Living Hope Institute, Inc. ("LHI") pursuant to a Guaranty Agreement executed by Kimbro Stephens ("Kimbro") as LHI's president and ratified thereafter by LHSW.  LHSW breached the lease agreement, and in the spring of 2006 Pinewood filed a complaint in the Circuit Court of Miller County, Arkansas against LHSW and Kimbro to recover the property, for a judgment on past-due lease payments, and to pierce the corporate veil of LHSW ("State Court Case").  On July 18, 2006, the Miller County Circuit Court entered an Order for Immediate Possession.  LHSW filed a petition

for relief under Chapter 11 of the bankruptcy code on that same date.  LHSW's Chapter 11 case was later converted to a case under Chapter 7 of the bankruptcy code on August 15, 2006, and Renee S. Williams ("Williams" or "the Trustee") was appointed as the Chapter 7 Trustee.

Before and after LHSW filed under Chapter 11, Kimbro and his wife Alice Stephens ("Alice" or, collectively, "the Stephenses") caused various entities to be created, including an entity called Living Hope Southeast ("LHSE") and conveyed LHSW's business to LHSE, continuing business under the name LHSE.  LHSW provided health services to the poor and secured payments from government sponsored agencies such as Medicaid. LHSW simply ceased to do business.  When the asset and business-shifting occurred, LHSE did not have a required provider number, so it used the number which had been given to LHI.  Mike Grundy ("Grundy"), one of the defendants in Pinewood's State Court Case, had previously worked for LHI, but when the operation shifted he assumed his same duties, as Chief Executive Officer,[1] at LHSE.  LHSE, therefore, seems to be a continuation of the operations previously run, principally by the Stephenses individually or through various trusts, through LHSW and LHI.

In February 2009, the Trustee filed several adversary proceedings ("AP's") against numerous defendants related to the Debtor – LHSW – including LHSE, Kimbro, Alice, and Grundy under various legal theories, including alter ego claims, seeking to recover pre-petition and post-petition transfers by LHSW.  The Trustee entered into a Settlement Agreement with several of the AP defendants on May 27, 2009 ("the Settlement").  The bankruptcy court granted approval of the Settlement over Pinewood's objections. Pinewood appealed the bankruptcy court's order approving

---

[1] It is unclear from the pleadings whether Grundy is Chief Executive Officer or Chief Operating Officer.  The Court will refer to him as Chief Executive Officer.

the Settlement to the federal district court in this same district, arguing that the Settlement encompassed claims, including alter ego claims, that the Trustee had no standing to bring or settle as such claims belonged exclusively to the creditors ("Pinewood's first appeal" - the current appeal will be referred to as "the instant appeal" or "the second appeal").

On March 18, 2011, the Honorable Jimm Larry Hendren, Chief United States District Judge for the Western District of Arkansas, reversed the Order approving the Settlement and remanded the matter to the bankruptcy court, finding that the Trustee had no standing to bring or settle alter ego or veil piercing claims, which belonged to the creditors.  Upon remand, the bankruptcy court issued an Order stating that "the settlement is not approved as to any alleged cause of action under any alter ego theory to pierce the corporate veil of the Debtor corporation or any third party corporation or LLC which may only be prosecuted by the creditors of the Debtor," but again approving the Trustee's settlement in all other respects. (Doc. 3-2, p. 2).

Meanwhile, in the State Court Case in Miller County, Pinewood filed a First Amended Complaint on January 12, 2010. While Pinewood's first appeal was pending before Judge Hendren, the Trustee filed an adversary proceeding in the bankruptcy court on February 18, 2010, seeking to enjoin Pinewood from pursuing its State Court Case against LHSE and Grundy.  In its AP Complaint, the Trustee argued that Pinewood's claims in the first amended complaint adversely impacted the Trustee's ability to collect the Settlement proceeds.  The Trustee also argued, in a subsequently-filed pre-trial brief, that Pinewood was attempting to bring the Trustee's causes of action against LHSE and Grundy in the state court action because many of the factual allegations in Pinewood's first amended complaint were the same as in the Trustee's settled AP's.  On May 23, 2011, Pinewood filed a Second Amended Complaint in its State Court Case, which was introduced

-4-

to the bankruptcy court for consideration.  After initially denying the Trustee's motion for a preliminary injunction on April 30, 2010 (prior to the filing of the Trustee's pre-trial brief), on June 8, 2011, the bankruptcy court entered an Order enjoining Pinewood "from pursuing LHSE and Grundy in state or federal court because Pinewood is pursuing the Trustee's settled causes of action." (Doc. 3-4, pp. 16-17).  Pinewood did not name the Debtor as a party, nor seek relief from the Debtor, in either the first or second amended state court complaints. Rather, in the State Court Case, Pinewood seeks, *inter alia*, to pierce the corporate veil of LHSW to its shareholders, Alice and Kimbro, and to pursue judgment against LHSE as the alter ego of Kimbro and Alice and as the alter ego of LHI. The state court has previously entered a judgment against LHI in excess of $1,300,000. While the bankruptcy court held that Pinewood had a right to pursue its alter ego/veil piercing claims against the owners of LHSE, the court found that Pinewood did not have a right to pursue the Trustee's causes of action and that Pinewood was unfairly attempting "to obtain a judgment against LHSE and Grundy prior to the fixing of the Trustee's inchoate judgment lien" against LHSE, which was contemplated in the Settlement. *Id.*

Essentially, as this Court understands the state of affairs, both Pinewood and the Trustee are interested in pursuing the assets of LHSE in order to satisfy Pinewood's claims for damages and the Trustee's Settlement, respectively.  Both Pinewood's and the Trustee's proceedings involve allegations concerning the shifting of assets from LHSW to LHSE.  Pinewood also has pending causes of action concerning shifting of assets from LHI to LHSE.  The Debtor, LHSW, as well as LHI, have both essentially been fleeced by the Stephenses such that any recoverable assets in these underlying proceedings are being held by LHSE, which is, in turn, ultimately controlled by the Stephenses.  While the Stephenses are the only parties specifically obligated to pay the Trustee under

the Settlement, the Settlement also contemplates that the Trustee "shall have an inchoate judgment lien on all membership interests of LHSE and all assets owned by and on all income derived from the operation of LHSE" which would  ripen into a fully vested and perfected lien if Kimbro and Alice were to fail to timely cure a default. (Doc. 3-4, p. 5).  Grundy, the Chief Executive Officer of LHSE, testified before the bankruptcy court that LHSE is, in fact, paying the obligation of Kimbro and Alice under the Settlement, and has thus far paid in the vicinity of $146,000.00.  *Id.*

## II. Standard of Review

A federal district court has jurisdiction, pursuant to 28 U.S.C. § 158, to hear appeals from the rulings of a bankruptcy court.  The Court examines the bankruptcy court's findings of fact for clear error and its conclusions of law *de novo*. *In re Food Barn Stores, Inc.*, 107 F.3d 558, 561-62 (8th Cir. 1997).  Where, as in this case, there are mixed questions of law and fact, the district court conducts a *de novo* review. *Freeland v. Enodis Corp.*, 540 F.3d 721, 729 (7th Cir. 2008).

## III. Motion to Stay

As previously stated, the bankruptcy court entered an Order enjoining Pinewood from pursuing its state court claims against LHSE and Mike Grundy on June 8, 2011.  In accordance with Fed. R. Bankr. P. 8005, Pinewood filed a notice of appeal from that Order and moved the bankruptcy court to stay its Order pending the appeal. The bankruptcy court denied that motion on June 27, 2011, after a hearing.  On that same date, Pinewood filed in this Court its Emergency Motion to Stay the bankruptcy court's injunction pending the present appeal. (Doc. 3). On July 1, 2011, the Court entered an Order temporarily staying the bankruptcy court's injunction "to preserve the status quo while giving the Court sufficient opportunity to consider the merits of the motion for stay pending appeal . . ." (Doc. 11).

In bankruptcy cases, as in all cases, a "party seeking a stay pending appeal must show (1) that it is likely to succeed on the merits; (2) that it will suffer irreparable injury unless the stay is granted; (3) that no substantial harm will come to other interested parties; and (4) that the stay will do no harm to the public interest. *James River Flood Control Assn. v. Watt*, 680 F.2d 543, 544 (8th Cir. 1982) (per curiam); *see also In re Ross*, 223 B.R. 702, 703 (B.A.P. 8th Cir. 1998). The factors need not be given equal weight or applied rigidly, but rather should be used as guides for the Court to make an individualized judgment in each case. *Hilton v. Braunskill*, 481 U.S. 770, 777 (1987). "The most important factor is the appellant's likelihood of success on the merits." *Brady v. National Football League*, 640 F.3d 785, 789 (8th Cir. 2011) (per curiam). The movant must, nevertheless, show that it will suffer irreparable injury unless a stay is granted. *Id*. Ultimately, the Court must balance the relative merits of all four factors, taking into consideration the relative strengths of each. *Id*. (citing Developments in the Law, *Injunctions*, 78 at 994, 1056 (1965) ("Clear evidence of irreparable injury should result in a less stringent requirement of certainty of victory; greater certainty of victory should result in a less stringent requirement of proof of irreparable injury.") (other citations omitted). Upon review of the materials and pleadings submitted, and after oral argument, the Court finds that Pinewood has met its burden and that a stay of the bankruptcy court's injunction is appropriate in this case.

## A. Likelihood of Success on the Merits

The Court considers first Pinewood's likelihood of success on the merits without reaching any final determination on the merits. Pinewood advances several different legal theories under which it argues that it is likely to prevail on the merits in this case. Because Pinewood need only show that they are likely to succeed on any one theory, and the Court finds that Pinewood is likely

to succeed on at least one theory, the Court will not address in detail every legal theory advanced by Pinewood.  Rather, the Court will briefly analyze the likelihood of success of Pinewood's most salient arguments without reaching any ultimate conclusion on the merits.

### i. Likelihood of Success Regarding Bankruptcy Court's Jurisdiction to Enjoin Pinewood

Pinewood argues that the bankruptcy court did not have jurisdiction to enjoin Pinewood's State Court action against nondebtors under the catchall provision of 11 U.S.C. § 105(a), which permits the court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Code]."  In her arguments concerning Pinewood's likelihood of success on the merits, the Trustee inexplicably states that Pinewood seems to have abandoned its argument that the bankruptcy court did not have jurisdiction to issue an injunction.  Pinewood had a subheading in its brief, in bold, asserting that "the bankruptcy court had no jurisdiction to enjoin Pinewood." (Doc. 4, p. 8).  While the Trustee stated that she declined to address that contention, she nevertheless advanced certain arguments in her brief that the Court finds relevant to this point and will therefore discuss.  The Trustee cites, at length, a bankruptcy case out of the Southern District of New York, *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 443 B.R. 295 (Bankr. S.D.N.Y. 2011).  Much of the cited passage, however, deals with what claims belong to the estate as opposed to the creditors.  It has already been decided that Pinewood's alter ego and veil piercing claims do not belong to the Trustee. The *Madoff* court stated that courts have consistently utilized 11 U.S.C. § 105(a) to stay third-party actions against non-debtor entities if a third-party claim would have an immediate adverse economic impact on the debtor's estate. 443 B.R. at 315-16.  The *Madoff* court relied heavily on the Seventh Circuit opinion in *Fisher v. Apostolou*, 155 F.3d 876, 882 (7th

-8-

Cir. 1998), a case on which the bankruptcy court also relied in granting the injunction against Pinewood. Without going into a lengthy analysis at this preliminary stage of the current litigation, the Court finds that the facts of this case seem to be more in line with a subsequent Seventh Circuit opinion, as discussed below, which specifically distinguishes its facts from those in *Fisher* and, therefore, *Fisher*, while instructive, is not the best persuasive authority to be applied in this case.

Pinewood argues that, while Kimbro and Alice Stephens essentially looted the Debtor, LHSW, they also looted the non-debtor LHI, which partially guaranteed the debt owed to Pinewood and against whom the Miller County Circuit Court has already entered a judgment in excess of $1,300,000. Here, though Pinewood's claims involve the same pool of money as the trustee's claims, and that money is in the possession of the same alter-ego defendant (LHSE), the claims do not appear to be based wholly on the same acts. *See In re Teknek, LLC*, 563 F.3d 639, 649 (7th Cir. 2009). It appears to the Court that LHSE looted both LHSW and LHI, only one of which (LHSW) is currently in bankruptcy. LHI is a separate non-debtor that is directly liable to Pinewood without regard to any liability of the Debtor, LHSW. The fact that the Stephenses, individually and/or through their trust(s), controlled both LHSW and LHI (as well as LHSE) does not appear to the Court to be likely to be sufficient to bring Pinewood's claim against LHSE under the umbrella of the bankruptcy proceeding. *Id.* (finding that, because the state court plaintiff's claim against alter egos did not depend on the alter egos' misconduct with respect to the debtor, the state court plaintiff had equal recourse against the alter egos because of the injury suffered by the separate non-debtor being pursued). Rather, it appears to the Court that Pinewood is seeking relief against a non-debtor (LHSE) as the alter ego of a separate non-debtor (LHI). Moreover, notwithstanding the "inchoate judgment lien" contained in the Settlement, LHSE is not, as of yet, specifically obligated to make

any payments under the Trustee's Settlement.

The Trustee argues that this case involves a non-debtor's conduct with respect to the debtor, and *Teknek* is, therefore, inapposite. This argument misses the point of distinction in *Teknek*. The court in *Teknek* acknowledged that that case, too, involved a non-debtor's conduct with respect to the debtor. However, the distinguishing factor in *Teknek*, as here, was that the case *also involved* the non-debtor's (LHSE) conduct with respect to a separate non-debtor (LHI).

The Court finds that Pinewood has shown a strong likelihood of success as to its claim that the bankruptcy court did not have jurisdiction to enjoin its State Court Case.

### ii. Likelihood of Success Regarding Whether Pinewood Is Pursuing the Trustee's Causes of Action

In its Order enjoining Pinewood, the bankruptcy court found that "Pinewood has a right to pursue its alter ego/veil piercing claims against the owners of LHSE; however, Pinewood does not have a right to pursue the Trustee's causes of actions." (Doc. 3-4, p. 16). The bankruptcy court ultimately concluded that "Pinewood is hereby enjoined from pursuing LHSE and Grundy in state or federal court because Pinewood is pursuing the Trustee's settled causes of action." *Id.* at pp. 16-17. The Court is concerned by these conclusions for several reasons, which will be addressed below, and finds that Pinewood has shown a strong likelihood of prevailing on the merits under its argument that the bankruptcy court erred in finding that it was pursuing the Trustee's claims in state court.

First, the bankruptcy court is far from clear in distinguishing between the alter ego/veil piercing claims that Pinewood has a right to pursue and the Trustee's settled causes of action which Pinewood does not have right to pursue. Previous to the instant appeal, Judge Hendren issued his Order reversing and remanding the bankruptcy court's approval of the settlement, specifically finding

that alter ego/veil piercing claims were personal to the creditors and, therefore, claims which the Trustee had no standing to assert. (Doc. 3-1, p. 12).  Subsequently, the bankruptcy court, in its Order again approving the Settlement upon remand, specifically excepted from the Settlement "any alleged cause of action under any alter ego theory to pierce the corporate veil of the Debtor corporation or any third party corporation of LLC which may only be prosecuted by the creditors of the Debtor." (Doc. 3-2, p.2).  It its State Court Case, Pinewood seeks, *inter alia*, to pierce the corporate veil of LHSW to its shareholders, Alice and Kimbro, and to pursue judgment against LHSE as the alter ego of Kimbro and Alice and as the alter ego of LHI. (Doc. 3-5, Counts II-V; Doc. 3-6, Counts II-V). It appears to the Court that it has already been decided that these claims are Pinewood's, and not the Trustee's, to pursue. It would seem to the Court that, aside from enjoining Pinewood from pursuing any claims that may belong to the Trustee,[2] the bankruptcy court likely should not have enjoined Pinewood from pursuing claims belonging to it as a creditor. The Court finds, therefore, that Pinewood has made a strong showing of likelihood of success on the merits of its claim that the bankruptcy court erred in determining that Pinewood was pursuing the Trustee's causes of action, and issuing a wholesale injunction against Pinewood as to its State Court Case.

### iii.  Other

The Court notes that it also has some concern that there does not seem to be any temporal limitation to the injunction imposed by the bankruptcy court, but that the Order could be construed

---

[2] The bankruptcy court found that Pinewood did not have authority to maintain causes of action for post-petition transfers or fraudulent pre-petition transfers, as those claims belong to the Trustee. This should not alter the District Court's previous ruling, however, that alter ego and veil piercing claims may be pursued by Pinewood as a creditor. The fact that the claims involve substantially similar underlying factual allegations does not convert Pinewood's claims into the Trustee's.

as a permanent injunction against Pinewood from ever pursuing its State Court claims against LHSE and Grundy.  The Trustee argued in her AP complaint that Pinewood should be enjoined from pursuing its State Court Case because the state litigation would interfere with the Settlement in that it would prevent LHSE from financing the settlement and would interfere with Grundy's duties as Chief Operating Officer of LHSE and thus LHSE's efficient operation of its business.  (Doc. 3-7, paras. 17-18).  The Trustee requested that the bankruptcy court "enjoin Pinewood from pursuing the Miller County litigation against LHSE and Grundy, *until the Settlement Agreement has been fully funded*." *Id*. at para. 19 (emphasis added).  The bankruptcy court seemingly went beyond the relief requested and ordered that Pinewood be enjoined from proceeding in its state court case against LHSE and Grundy regardless of whether the Settlement is ever fully funded.  Furthermore, as noted by the bankruptcy court in its Order, it seems as though LHSE and Grundy made a conscious choice not to make payments towards the Settlement, not because of any adverse impact from Pinewood's State Court action, but rather because a decision was made to make equity distributions to the AK Tennessee Irrevocable Trust ("ATI") (presumably for the ultimate benefit of Kimbro and Alice) rather than pay towards the Settlement.  (Doc. 3-4, p. 10-11).  LHSE also paid the tax liabilities of Kimbro and Alice and ATI.  *Id.*  Therefore, Pinewood has raised serious questions as to whether there is, in fact, any adverse impact on the Settlement that can be traced to Pinewood's State Court Case.

The Court also has concerns as to whether the bankruptcy court could enjoin Pinewood in its State Court Case based on a Settlement which has not been approved by a final order.  Pinewood has appealed the bankruptcy court's Order approving the Settlement agreement upon remand, arguing that the bankruptcy court erred in finding that the Trustee and the parties had reached a

settlement agreement which excluded causes of action that the Trustee had no standing to settle. That case, 4:11-cv-04098, is currently pending before this Court and is the subject of Pinewood's pending Motion to Consolidate in this case. These concerns are of some, not minor, importance in this case, as the Court is not convinced that the bankruptcy court could approve a modified settlement agreement that was never consented to by the interested parties. If there is no valid, approved Settlement, the bankruptcy court would not be able to base its injunction of Pinewood on any potential adverse impact to the Settlement.

Finally, the Trustee argues that "it takes a strained interpretation" to come to the conclusion that Pinewood makes that Judge Hendren reversed the original settlement. (Doc. 12, p. 9). The Trustee states "Judge Hendren's opinion is clear: the settlement was in the best interest of all creditors . . ." *Id*. The Trustee claims that the "only flaw" Judge Hendren found was the failure of the bankruptcy court to "carve out the alter ego cause of action to Pinewood." *Id.* The Trustee then leaps to the conclusion that Pinewood is, therefore, unlikely to prevail on the merits in this appeal. This conclusion is not only a *non sequitur*, but the argument itself is disingenuous and misstates Judge Hendren's findings. The Court would not have otherwise addressed this argument but for a desire to ensure that Judge Hendren's Order is not misconstrued.

First, Judge Hendren found that the Settlement was flawed due to the inclusion of *both* alter ego and veil piercing claims "personal to the creditors which the Trustee had no standing to assert." (Doc. 3-1, p.12). As was reasoned in Judge Hendren's Order, since the Trustee never had standing to assert such claims, she likewise did not have standing to settle them. The error of the bankruptcy court was not simply or solely in failing to "carve out" such claims. The error was in approving a settlement which should never have included such claims to begin with. Furthermore, Judge

-13-

Hendren did not make any finding that the Settlement was in the best interest of the creditors (nor would such a finding be particularly relevant here). Rather, Judge Hendren simply stated that he could not say that the bankruptcy court *abused its discretion* in determining that the Settlement was in the best interest of the creditors. This is a meaningful distinction and one that should be carefully regarded. Finally, it does not take a "strained interpretation" to conclude that Judge Hendren reversed the original Settlement. Rather, it takes only a casual reading of Judge Hendren's Order to see that Judge Hendren clearly stated that the bankruptcy court's error "requires *reversal* of the Bankruptcy Court's Order approving the Settlement. Accordingly, that Order will be *reversed* . . . IT IS, THEREFORE, ORDERED that . . . the Order of the Bankruptcy Court approving Settlement is *reversed* . . ." (Doc. 3-1, p. 12). The Court finds the Trustee's arguments regarding Judge Hendren's Order to be illogical and unavailing.

For all the above-stated reasons, the Court concludes that Pinewood has made a strong showing that it is likely to succeed on the merits in this appeal. Accordingly, this factor weighs in favor of granting the stay.

### B. Pinewood's Showing of Irreparable Injury

The Court notes that the bankruptcy court's injunction did not indicate any temporal limitation. If Pinewood were to be permanently enjoined from pursuing its action in state court, it would undoubtedly suffer some irreparable harm in that, even if at some point the Settlement were to be fully funded, Pinewood would be unable to proceed in its action to recover damages that may be owed to it by LHSE or Grundy.

Neither LHSE or Grundy is currently obligated to make any payments according to the Settlement. Pinewood, therefore, also stands to be irreparably harmed if LHSE and/or Grundy are

-14-

allowed to continue to shuffle their resources towards obligations which they are not even obligated to pay. If no stay is entered, Pinewood would seem to be the only creditor prohibited from competing in the "race to the assets" of LHSE and Grundy.  Moreover, LHSE could continue to shuffle its resources towards discretionary spending, such as equity distributions for the benefit of Kimbro and Alice – the very parties ultimately obliged to make payments under the Settlement.  The Trustee argues that Pinewood has only secured a judgment against LHI and therefore has no right to pursue any of LHSE's assets because it has not reduced its claim to judgment.  That is circular logic, i.e. the injunction preventing Pinewood from pursuing judgment against LHSE should stand because Pinewood has not yet secured a judgment against LHSE.  The Court cannot accept such logic.

If not allowed to proceed in its State Court Case, Pinewood could also be irreparably harmed in that it would be at a decided disadvantage in the prosecution of its State Court Case.  Although the temporary stay entered by this Court presumably took care of any immediate risk of dismissal due to an inability of Pinewood to respond to motions to dismiss filed by LHSE and Grundy, Pinewood would nevertheless be hamstrung in its ability to prosecute its State Court Case effectively if no stay of the bankruptcy court's injunction were entered.  The Trustee argues that, even if the Miller County Circuit Court dismisses all or part of the State Court Case, Pinewood would have the right to appeal such an order.  Presumably, however, Pinewood would be prevented, by the very injunction they are objecting to, from pursuing such an appeal.

The Court finds that Pinewood has made an adequate showing that it is likely to suffer irreparable harm, and this factor, therefore, weighs in favor of granting the stay.

### C. Substantial Harm to the Trustee

The Court finds that the Trustee will not suffer substantial harm if a stay is granted.  As noted

-15-

above, the bankruptcy court found, based on testimony presented during the AP, that LHSE simply chose not to fund the Settlement even though it had the ability to do so.  Instead, because LHSE is not presently specifically obligated under the Settlement, LHSE chose to make equity distributions and to pay the tax liabilities of Kimbro, Alice, and ATI, among other expenditures.  The evidence seems to indicate that Pinewood's State Court Case does not, in fact, have a significant adverse impact on the Trustee's ability to enforce the Settlement if, in fact, it is enforceable at this time without a final order of approval.  The Trustee suggests that, if Pinewood will be irreparably harmed by *not* being able to compete in a "race to the assets," the Trustee will likewise be harmed by *allowing* Pinewood to compete in the race to the assets – the presumption being that Pinewood would win the race and get all of LHSE's assets, leaving the Debtor's other creditors with nothing.

This is a case in which one party or the other will likely suffer some degree of harm no matter how this Court resolves the motion for stay pending appeal.  LHSE seems to be the "cash cow" that the Trustee is counting on to fund her Settlement and Pinewood is likewise counting on to fund its judgment against LHI as well as other damages to which it may be entitled.  When LHSE expends resources in one direction, the balance available to go towards the other may be lessened.  An overall balancing of the harms, however, weighs in favor of granting the stay as the harm which would be suffered by Pinewood due to the bankruptcy court's injunction outweighs the harm which might be suffered by the Trustee if a stay is imposed. Furthermore, Pinewood's burden of showing irreparable harm is lessened relative to the Court's finding that Pinewood made a strong showing of likelihood of success on the merits.  The Court finds that Pinewood has met its burden of showing irreparable harm, and the balance of harms weighs in favor of granting a stay.

### D. The Public Interest

-16-

The Court finds that the public interest factor does not weigh heavily in the balance in this case, as the public interest would be served in some way whether or not the Court grants a stay of the bankruptcy court's injunction. Ultimately, the public interest will be best served by the proper application of federal law, as it stands in this Circuit, regarding the imposition of injunctions by a bankruptcy court, including a careful review of the scope of 11 U.S.C. § 105.

**E. Conclusion as to Stay**

Based on an analysis of all the relevant factors, as discussed above, the Court finds that the bankruptcy court's Order of June 8, 2011, imposing an injunction on Pinewood's state court proceedings, is stayed pending the final disposition of this appeal. This stay, however, is conditioned to permit Pinewood to proceed on its Second Amended Complaint to judgment against LHSE and Grundy but not to collection against LHSE or Grundy unless and until this Court decides, on the merits, that the bankruptcy court's Order should be reversed.  The temporary stay imposed by the Court's Order of July 1, 2011 is dissolved, and it is replaced by the stay imposed by the terms of this Order.

**IV. First and Second Motions to Strike**

In her first Motion to Strike (incorporated into Doc. 16), the Trustee objects to Pinewood's filing of 79 records which were not a part of the record before the bankruptcy court.  The Trustee requests the Court to strike those documents from the record on appeal.  The Trustee further requests that the Court also strike all other records which do not relate to any issue on appeal. In her second Motion to Strike (Doc. 19), the Trustee moves to strike an exhibit to Pinewood's Supplement of the Designated Record on Appeal, which consists of selected pages of a transcript from a trial regarding Pinewood's objection to the Trustee's Settlement in the bankruptcy court.  The Trustee argues that

-17-

consideration of the selected pages, or any of the transcript, would be inappropriate since that matter has already been appealed (during the "First Appeal") and decided.

Fed. R. Bankr. P. 8006 allows a bankruptcy appellant (Pinewood) to file and serve on the appellee (the Trustee) "a designation of the items to be included in the record on appeal and a statement of the issues to be presented." The appellee may then serve on the appellant "a designation of additional items to be included in the record on appeal. . ." *Id.* "The record on appeal *shall* include the items so designated by the parties . . ." *Id.* (emphasis added). The rule therefore, does not provide a mechanism for excluding designated documents from the record on appeal. *See In re Berge*, 37 B.R. 705, 708 (Bankr. Wis. 1983) (reviewing the language of Rule 8006 and finding that the "only kind of modification permitted under R. 8006 would . . . be addition to, and not exclusion from, the record"). Furthermore, the record should contain the documentation necessary to afford the reviewing court a complete understanding of the case. *See e.g., Landmark Finance Corp. v. Cox*, 2 B.R. 739, 740 (S.D. Ga. 1980). Nevertheless, the scope of Pinewood's appeal should be "limited to a review of the matters which were before the trial court at the time it entered the order from which the appeal is taken." *Matrix IV, Inc. v. Am. Nat'l Bank & Trust Co. of Chicago, Inc.*, 2003 U.S. Dist. LEXIS 23280 at *6 (N.D. Ill. 2003). The record on appeal "should contain all documents and evidence bearing on the proceedings below and considered by the bankruptcy judge in reaching his decision." *Id.* (citations omitted).

Under Fed. R. Bankr. P. 8006, the Court finds that the Trustee's Motions to Strike should be denied as procedurally defective. In *Matrix*, the Court was considering a motion to supplement the record, not a motion to strike. The Court may have discretion in deciding whether a supplement may be filed out of time - especially a supplement which includes materials not brought to the

attention of the bankruptcy court.  It does not seem, however, that the Court can or should entertain motions to strike portions of an appropriately-filed designated record.  The Trustee does not argue that Pinewood was untimely in its filings or that the filings were otherwise procedurally inappropriate.  The other cases to which the Trustee directed the Court's attention at oral argument the Court finds to be likewise inapposite or otherwise contrary to the Court's interpretation of Rule 8006.

Additionally and alternatively, the Court finds that the Trustee's Motions to Strike should be denied in that it appears that the documents the Trustee is objecting to likely were before the bankruptcy court at the time that the Order enjoining Pinewood was entered on June 8, 2011.  The Court has not yet waded through the lengthy designated record in any attempt to parse out documents that may not have been before the bankruptcy court and does not intend to do so at this time simply to rule on a Motion to Strike without more specific objections by the Trustee.  At oral argument, the Trustee specifically raised the issue of whether or not Pinewood's second amended state court complaint was before the bankruptcy court in the adversary proceeding.  Although the second amended complaint had not yet been filed at the time the Trustee filed her AP Complaint, it was filed and presented by Pinewood to the bankruptcy court before the Order enjoining Pinewood was entered.  The Trustee also specifically objects, in her Second Motion to Strike, to portions of a transcript from a trial regarding Pinewood's objection to the Trustee's Settlement in the same bankruptcy court which issued the Order presently at issue.  Analysis of the Settlement and its viability is intimately related to the issues raised in the current appeal and, as such, the Court finds that the trial transcript relating to Pinewood's objections will likely help in affording the Court a complete understanding of the appeal at hand.  Furthermore, in this Court's opinion, the bankruptcy

-19-

Order makes clear by its context that the bankruptcy court was necessarily aware of the previous and collateral litigation history surrounding the AP that was then before it. In this case, which has a long and complex litigation history involving many inter-related proceedings, documents from previous and collateral litigation are necessary for this Court to obtain a complete understanding of the issues presented on appeal. The Trustee's Motions to Strike are therefore DENIED. The Court will keep in mind, however, that "the fact that a document is included in the relevant record does not mean that . . . the reviewing district court judge is entitled to use it for any purpose." *Nantucket Investors II v. Cal. Fed. Bank*, 61 F.3d 197, 205 (3rd Cir. 1995). The Court will limit its use, where appropriate, of any designated records filed by the parties.

## V. Motion to Consolidate

Pinewood has filed a separate appeal from the bankruptcy court, which action is currently pending before this Court and has been designated as case number 4:11-cv-04098, in which Pinewood appeals the bankruptcy court's Order approving the Settlement agreement upon remand, arguing that the bankruptcy court erred in finding that the Trustee and the parties had reached a settlement agreement which excluded causes of action that the Trustee had no standing to settle ("the Third Appeal"). Pinewood now moves to consolidate the instant appeal with the Third Appeal arguing that the records will be essentially identical and the issues are substantially connected, particularly considering that a reversal of the settlement approval would negate one of the bankruptcy court's justifications for enjoining Pinewood's State Court Case.

The Trustee argues that she believes that the sole purpose of Pinewood's filing of the motion was to delay a decision in the instant appeal, arguing that there is not even a remote similarity between the appeals. This argument seems contrary to the Trustee's previous admission that the

instant appeal is, "to some extent, related" to Judge Hendren's Order regarding reversal and remand of the original Settlement agreement.  (Doc. 13, para. 3).  The Trustee further argues that the record in the instant appeal should consist only of the evidence which was introduced by the parties at the trial of the adversary proceeding, and that consolidation would involve adding to the record materials not before the bankruptcy court at the time of the AP.  The Court, however, believes that it can limit its consideration of any materials on the record where appropriate.  If the record filed for the Third Appeal contains materials which it would be inappropriate for the Court to consider in making a determination regarding legal issues involved solely in the instant appeal, the Court will limit its consideration of the materials accordingly.  The Trustee also argued that consolidation of the two appeals would make it impossible for the Trustee to determine the basis of the Court's opinion regarding the two appeals.  The Court will make every attempt, when issuing any opinions or orders in this case, to make clear the basis for its findings.

Fed. R. Civ. P. 42(a) provides that "if actions before the court involve a common question of law or fact," the Court may either join "any or all matters at issue in the actions" or "consolidate the actions." The Court finds that the instant appeal and the Third Appeal involve common questions of both law and fact and that consolidation of the two appeals will avoid duplicative filings and promote judicial economy, as certain legal determinations in one appeal will necessarily affect legal rulings in the other appeal.  No prejudice or delay should result due to the consolidation.  The Court finds, therefore, that Pinewood's Motion to Consolidate should be GRANTED.  The cases will be consolidated with the instant appeal designated as the lead case.

## VI. Conclusion

For all the reasons stated above IT IS ORDERED that Pinewood's Emergency Motion to Stay

Pending Appeal (Doc. 3) is GRANTED.  The bankruptcy court's Order of June 8, 2011, imposing an injunction on Pinewood's state court proceedings, is hereby STAYED pending the final disposition of this appeal. This stay, however, is conditioned to permit Pinewood to proceed on its Second Amended Complaint to judgment against LHSE and Grundy but not to collection against LHSE or Grundy unless and until this Court decides, on the merits, that the bankruptcy court's Order should be reversed.  The temporary stay imposed by the Court's Order of July 1, 2011 is dissolved, and it is replaced by the stay imposed by the terms of this Order.

IT IS FURTHER ORDERED that the Trustee's First and Second Motions to Strike (Docs. 16 and 19) are DENIED.

IT IS FURTHER ORDERED that Pinewood's Motion to Consolidate (Doc. 26) is GRANTED.  The Clerk is directed to consolidate 4:11-cv-04098 with the instant appeal, with the instant appeal designated as the lead case. Parties should file any further documents and/or further pleadings for both cases in the lead case only.

IT IS SO ORDERED this 11th day of January, 2012.

/s/ P. K. Holmes, III
P.K. HOLMES, III
UNITED STATES DISTRICT JUDGE